IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MANORCARE OF EASTON PA LLC,<br>　　　　Plaintiff,<br><br>　　v.<br><br>JOSEPH A. NAGY,<br>　　　　Defendant<br><br>―――――――――――――――<br><br>JOSEPH A. NAGY and JOSEPH EUGENE NAGY,<br>　　　　Counter-Plaintiffs,<br><br>　　v.<br><br>MANORCARE OF EASTON PA LLC; KENNEDY, PC; NORTHAMPTON COUNTY; AETNA, INC.; HEARTLAND HOSPICE; DR. EDWARD CUMBO; DR. DILIP BERA; BRAKELEY PARK CENTER; NEW EASTWOOD CARE AND REHAB; COMMONWEALTH OF PENNSYLVANIA; DR. KEYURKUMAR DALSANIYA; DR. STEPHEN KSIAZEK; and ST. LUKE'S WARREN HOSPITAL,<br>　　　　Counter-Defendants | CIVIL ACTION<br>NO. 13-5957 |

**MEMORANDUM**

**SCHMEHL, J.  /s/ JLS**　　　　　　　　　　　　　　　　　　　　　　　**June 25, 2015**

　　　　This action has a complicated procedural history, and this memorandum opinion supplements and explains the rulings on numerous motions in the concurrently entered order. In short: Plaintiff ManorCare sued Defendant Joseph A. Nagy to recover money owed for his late wife's care; Joseph A. Nagy, joined by his son Joseph Eugene Nagy, inexpertly attempted to remove and counterclaim; after a hearing, this Court ordered the Nagys to file an amended counterclaim that more clearly explained the claims and

intended counter-defendants; the Nagys filed such a document, which incidentally included a motion to dismiss the original direct claim; ManorCare and possibly other defendants moved to dismiss based only on lack of service and failure to file a certificate of merit for malpractice claims—otherwise, they moved only for a more definite statement; the Nagys filed a motion to strike the motion to dismiss, apparently based on some form of inappropriate collusion between attorneys for the plaintiff/counter-defendants, and then filed a motion to strike the response to the motion to strike for the same reason; the Nagys then filed two motions essentially seeking to block discovery; finally, presumably because of confusion and difficulty between the Nagys and the Clerk's office regarding service of the amended counterclaim, the Nagys filed a document purporting to be a third-party complaint, along with a motion for leave to serve that third -party complaint.

As explained with a bit more detail below, the Court resolves these numerous outstanding issues by: denying the Nagys' motions to strike and motions to block discovery, as they lack any basis or merit; striking the third-party complaint, and denying the motion to serve it, because it is merely an erroneous attempt to deal with problems serving the amended counterclaim rather than an actual third-party complaint; granting dismissal of a single malpractice count based on failure to file a certificate of merit; denying dismissal for lack of service, because it appears service was stymied at least in part by confusion that prevented the issuance of summonses; denying the motion for a more definite statement, because the amended counterclaim does contain at least comprehensible claims and no further revision is likely to be constructive; allowing those parties who have joined in the motion to dismiss the amended counterclaim to file a

supplemental motion presenting additional grounds for dismissal; and ordering issuance of summonses to effect service of the amended counterclaim, after which of course the newly served counter-defendants may also choose to file further motions.

Motion to Dismiss the Amended Counterclaim or Alternatively for a More Definite Statement

The most complicated part of the current motion landscape must be addressed first because it has implications for some of the other parts. In response to the amended counterclaim, ManorCare, along with "Kennedy PC Law Offices, and any other entity set forth" in the amended counterclaim,[1] filed a motion with three defined pieces: a motion to dismiss for improper joinder and lack of service; a motion to dismiss supposed medical malpractice claims for failure to file a certificate of merit; and a motion for a more definite statement.

It appears to be clear that the Nagys have not served the amended counterclaim on any potential counter-defendant other than ManorCare.[2] It is less clear that the Nagys made no efforts toward service. Rather, it seems the Nagys had difficulty getting the Clerk's office to issue summonses for service of the amended counterclaim on the additional parties. In response to the motion to dismiss, the Nagys stated in part that they "haven't received a Summons to accompany the Counterclaim and request clarification and/or leave from the Court concerning issuance of the Summons for the Counterclaim."

---

[1] It seems clear that ManorCare and its attorneys cannot actually represent <u>all</u> the additional parties, which include the Commonwealth of Pennsylvania, among others.

[2] ManorCare itself at least received the amended counterclaim as the Court-ordered responsive pleading to the original complaint through the docketing system. ManorCare does not argue the amended counterclaim should be dismissed as to ManorCare based on service issues, so even if the Court granted the motion in its entirety, the counterclaims would survive against ManorCare pending a more definite statement; in other words, as currently presented, the motion does not provide a path to getting rid of the counterclaims altogether.

The text of the Nagys' motion regarding service of the purported third-party complaint also suggests confusion between the Nagys and the Clerk's office regarding issuance of summonses for the amended counterclaim.

Understandably, the unusual arrangement of this case and the Nagys' *pro se* status[3] have made the situation confusing. The filing of a third-party complaint may be the typical way to bring in additional parties as defendants to a claim raised by the original defendant, but third-party complaints are for claims essentially seeking indemnity. *See* Fed. R. Civ. P. 14(a)(1) ("A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be *liable to it for all or part of the claim against it*." (emphasis added)). Rule 13(h), on the other hand, clearly provides for the addition of parties to a *counterclaim* under Rules 19 and 20. *See Baltimore & Ohio R. Co. v. Cent. Ry. Servs., Inc.*, 636 F. Supp. 782, 786 (E.D. Pa. 1986) (explaining that claims against additional parties that were improper under Rule 14 because they were "not based upon the plaintiffs' claims against the defendant" were nevertheless permissible under Rule 13(h), and going on to analyze the propriety of joinder under Rules 19 and 20); *see also Black v. London Assur. Co. of London, England*, 122 F. Supp. 330, 332 (W.D.S.C. 1954) (ordering service of a counterclaim on additional parties under Rule 13(h)). Rule 20 allows the joinder of plaintiffs (here Joseph Eugene joins in the counterclaim though he was not an original defendant) and defendants (the Court has included in the caption above all parties that have a specific claim listed against them in the amended counterclaim) if the involved right to relief is joint and several or arises out of the same transaction, occurrence, or series of transactions or occurrences.

---

[3] The Court again reminds the Nagys that as a non-lawyer, Joseph Eugene really may not represent the interests of Joseph A. and urges both of them to retain counsel if possible.

Without addressing the legitimacy of the claims set forth in the amended counterclaim, their substance includes various mishandling of Mrs. Nagy's care, legal situation, and billing. Such claims, and the parties involved, certainly seem to arise out of the same series of occurrences as the original action to recover payment for Mrs. Nagy's care based on Joseph A. Nagy's statutory duty of support.

In sum, the Court finds that the failure to serve the amended counterclaim on the additional parties was likely not the Nagys' fault. Further, the Court will order the Clerk's office to issue summonses related to the amended counterclaim for the additional parties. The Nagys must then serve those summonses with copies of the amended counterclaim and copies of the order accompanying this opinion on each of the additional parties.[4]

Turning next to the certificate of merit issue, it is correct that a professional liability claim requires a certificate of merit. Such claims are brought under state law, and Pennsylvania requires a certificate of merit "[i]n any action based upon an allegation that a licensed professional deviated from an acceptable professional standard." Pa. R.C.P. 1042.3. The requirement applies to both medical and legal malpractice, among other actions. *See* Pa. R.C.P. 1042.1 (defining "licensed professional" to include health care providers and attorneys). The Nagys have not provided any certificate of merit, so dismissal of any professional liability claims is proper. As explained further below, the amended counterclaim contains many varied allegations and statements, but it also includes a fairly clear list of enumerated counts. Although the amended counterclaim includes some statements referring to medical treatment, it does not list any counts for

---

[4] Such service must be in accordance with Rule 4. Despite assertions by the Nagys, service by mail is <u>not</u> sufficient.

medical malpractice. Count Nine, however, is titled "Legal Malpractice," and Count Ten is titled "28 U.S.C. § 1343 [line break] Legal Malpractice." The content of Count Ten is vague and likely vulnerable to other arguments, but it refers mainly to § 1343 rather than malpractice. The Court will dismiss Count Nine and any other professional liability claims unless and until the Nagys provide a certificate of merit in compliance with Pa. R.C.P. 1042.3.

Rather than offering any further grounds for dismissal, the motion otherwise seeks a more definite statement. To be sure, the amended counterclaim contains a great deal of surplus, confusing, and irrelevant material, but the Court will deny the motion for a more definite statement for two general reasons. First, the basic nature of the Nagys' complaint is at least comprehensible, and the document includes an identifiable, enumerated list of counts on which court proceedings can focus. Each of the numbered claims lists the counter-defendants against which it is lodged. The enumerated counts vary in their clarity and some have fairly obvious problems with sufficiency, lack of a private cause of action, and so forth, but they are as follows: Counts One, Two, and Three allege the complaint violates the Fair Debt Collection Practices Act because it was brought in the wrong location, Northampton County not being the place of any involved real property, the place of contract (there allegedly being no contract), or the place of defendant's residence; Count Four alleges violation of FDCPA notice requirements; Count Five refers to 18 U.S.C. § 1031 regarding fraud, and also mentions fiduciary breach; Count Six is brought under 18 U.S.C. § 1957 regarding racketeering; Count Seven is brought under 18 U.S.C. § 1962 regarding RICO; Count Eight refers to 18 U.S.C. § 241 and conspiracy against rights; Count Nine alleges legal malpractice and will be dismissed as described

above; Count Ten alleges a violation of civil rights and elective franchise related to failure to let Joseph Eugene make decisions under a power of attorney; Count Eleven alleges abuse of legal process; Count Twelve is titled Capitis Diminutio and refers to the Nagys, including Mrs. Nagy, being prevented from exercising alleged rights to choose certain treatments; and finally there are a petition for constructive trust and a claim for wrongful death that have no details or explanation but can be at least generally comprehended from their titles. Obviously, some of these counts refer to the more disjointed allegations earlier in the document, but those allegations are not entirely indecipherable either. The Nagys apparently contend that Mrs. Nagy's care was mismanaged in terms of treatment, documentation, billing, and administrative decisions such as transfer between facilities, and that counter-defendants made decisions that should have been within the Nagys' authority. To the extent those various allegations can be sifted into the enumerated counts, they can be understood and assessed.

Second, given the original counterclaim and other documents the Nagys have filed, the Court doubts any new filing will be more definite or comprehensible; in fact, it may well include entirely new content and issues. Instead of ordering a more definite statement, the Court will order ManorCare and the other counter-defendants who have joined the present motion to file a new motion to dismiss setting forth any additional grounds for dismissal of the counts included in the present amended counterclaim. Otherwise, having disposed of the two limited arguments for dismissal (service and certificate of merit), the Court would have to either: grant the motion for a more definite statement, receive an entirely new document, and only then hope to be able to address other reasons for dismissal; or, *sua sponte* raise and consider numerous possible grounds

for dismissal of the current amended complaint. Given the relative comprehensibility of the amended complaint and the fact that the newly served counter-defendants will be entitled to and probably will file motions to dismiss it anyway, it certainly makes sense and is more efficient to focus on the current document as is. To be clear, describing the counts of the amended counterclaim as comprehensible does not mean they are sufficient to state a claim, it simply means that the counter-defendants should move to dismiss them for insufficiency or other reasons rather than request a more definite statement that is unlikely to be a substantial improvement.

Nagys' Motion to Dismiss the Direct Claim

The Nagys' answer and amended counterclaim (Doc. #14) includes at the very end of the document a "Motion to Dismiss" that contains just one line: "A. The Nagy's [sic] request the Court dismiss the claims against them in the name of justice." This apparent motion seems to have gone unnoticed, as there has been no response, but it was unnoticed for good reason. It obviously sets forth no grounds or argument for dismissal; therefore, to the extent the motion even requires a ruling, it will be denied.

Nagys' Motions to Strike

The Nagys filed a motion to strike the motion to dismiss (Doc. #18) and a document entitled "Defendant/Counter-Plaintiff's Objection to Manor Care of Easton, PA LLC's Late Filing and Joinder of Heartland Pharmacy of Pennsylvania, LLC as Counter-Defendant (Doc. #23), the title of which makes little or no sense but which actually consists of a request to strike the response to the motion to strike. These motions to strike

allege some kind of collusion or conflict of interest preventing the cooperation of ManorCare attorneys Rodney A. Myer and Michael Bootier. The motions also suggest that attorney Bootier had not properly entered an appearance and that the response to the motion to strike was filed late. As for the lateness issue, the procedural situation of this matter has been confusing and the delay was minimal, so the Court retroactively grants any necessary extension. Attorney Bootier did properly file his appearance, so that provides no reason to strike. Finally, there is nothing improper about multiple attorneys jointly representing one or more clients. Accordingly, there is clearly no basis for these motions to strike and they will both be denied.

Nagys' Motions to Block Discovery

The Nagys filed a "Discovery Plan Objection and Motion for Protective Order" (Doc. #25) and a "Motion to Deny ManorCare's Request for Admission, Interrogatories, and Request for Production of Documents" (Doc. #29). These motions are baseless refusals to comply with the normal discovery process. In fact, after several pages of statements about the case having nothing to do with discovery, the Nagys plainly state that they "refuse to co-operate with anyone involved in criminal activities." That simply is not a proper excuse for failure to cooperate in the discovery process. The Court will deny these motions as baseless. It is apparent that the parties have not been able to confer and agree on discovery matters, which is frankly not unexpected in this case. The parties are entitled to raise discovery problems in accordance with the undersigned's policies and procedures; further, assuming discovery has not proceeded properly by the time all

preliminary motions have been resolved, the Court will hold a Rule 16 conference, at which point discovery compliance and scheduling can be addressed.

Third-Party Complaint and Related Motions

As noted above, the purported third-party complaint (Doc. #30)—along with the motion for leave to serve it (Doc. #31) and the motion for judicial relief regarding compulsory counterclaim (Doc. #32)—is not really a third-party complaint, but rather an attempt to deal with obstacles to service of the amended counterclaim. The references in these documents to discussions with the Clerk's office indicate that the Nagys sought summonses for service and were told they could not be issued because there was no third-party complaint on record. As explained above, that is an understandable misinterpretation of this entire situation, but it is a misinterpretation nevertheless. Under Rule 13(h), a counterclaim may join parties, and it will of course require summonses for service. The simplest and most appropriate course of action is to strike the third-party complaint and deny the two related motions as moot; this will not prejudice the Nagys in any way, as the Clerk's office will be ordered to issue summonses for their use in serving the amended counterclaim, which was the actual purpose of the "third-party" filings.