IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MANORCARE OF EASTON PA LLC, <br>         Plaintiff, <br>   v. <br><br> THE ESTATE OF JOSEPH A. NAGY, <br>         Defendant <br><br> _____ <br><br> THE ESTATE OF JOSEPH A. NAGY and <br> JOSEPH EUGENE NAGY, <br>         Counter-Plaintiffs, <br>   v. <br><br> MANORCARE OF EASTON PA LLC; <br> KENNEDY, PC; NORTHAMPTON COUNTY; <br> AETNA, INC.; DR. EDWARD CUMBO; DR. <br> DILIP BERA; BRAKELEY PARK CENTER; <br> NEW EASTWOOD CARE AND REHAB; <br> COMMONWEALTH OF PENNSYLVANIA; <br> DR. STEPHEN KSIAZEK; and ST. LUKE'S <br> WARREN HOSPITAL, <br>         Counter-Defendants | CIVIL ACTION <br> NO. 13-5957 |

**MEMORANDUM**

SCHMEHL, J. /s/ JLS                                               SEPTEMBER 29, 2017

      Counter-Defendants moved to dismiss the Nagys' amended counterclaim in eleven individual motions. This Court will address each Count from the amended counterclaim below as it corresponds to Counter-Defendants. Given this Court's longstanding history with the facts of this case and its procedural complexity, the Court will adopt the facts and procedural history outlined in its June 25, 2015 Memorandum Opinion (ECF Docket No. 33).[1]

---

[1] The Nagys removed this case from the Court of Common Pleas in Northampton County, PA, and filed a counterclaim against multiple defendants. The Court is unclear whether the Nagys invoked federal question jurisdiction arising from their counterclaim as a basis for removal. However, this attempt would

As stated in our June 25, 2015 Opinion, given the relative comprehensibility of the Nagys' amended counterclaim and the fact that the newly served Counter-Defendants eventually timely moved to dismiss, it made sense and was more efficient to focus on the document as filed rather than grant the Counter-Defendants' Motion for a More Definite Statement. The Nagys' amended counterclaim contained identifiable, enumerated lists of counts on which court proceedings could focus.[2]

However, this Court sufficiently reviewed the Nagys' amended counterclaim and finds that it fails to satisfy the pleading standard required to survive a Rule 12(b)(6) motion. Therefore, the Counter-Defendants' motions are granted and each count in the amended counterclaim shall be dismissed. The Court's reasoning is stated below.

A. **STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

---

be improper because "[r]emoval based on federal question jurisdiction is governed by the 'well-pleaded complaint' rule, whereby jurisdiction exists only 'where an issue of federal law appears on the face of the complaint.'" *Fosnocht v. Demko*, 438 F.Supp.2d 561, 563-64 (E.D. Pa. 2006). Therefore, a counterclaim appearing as part of the defendant's answer may not serve as a basis for 'arising under' jurisdiction. *Id.* at 564. Notwithstanding the requirements, the Nagys' removal was proper under diversity jurisdiction and amount in controversy which was satisfied on the face of ManorCare's complaint in Northampton County.

[2] The Court again reminds the Nagys that as a non-lawyer, Joseph Eugene really may not represent the interests of Joseph A. Nagy's Estate and urges both of them to retain counsel moving forward.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d. Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d. Cir. 2010).

However, a document filed *pro se* must be "liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**B.    ANALYSIS**

  **1.  Count I-IV: Fair Debt Collection Practices Act**

To establish a *prima facie* case under 15 U.S.C. 1692i(a)(1) of the Fair Debt Collection Practices Act ("FDCPA"), a plaintiff must prove: "(i) she is a natural person who is harmed by violations of the FDCPA, or is a 'consumer' within the meaning of 15 U.S.C. §§ 1692a(3), 1692(d) for purposes of a cause of action; (ii) the 'debt' arises out of a transaction entered primarily for personal, family, or household purposes; (iii) the defendant is a 'debt collector' within the meaning of 15 U.S.C. § 1692a(6); and (iv) the defendant has violated, by act or omission, a provision of the FDCPA." [3]  *Goins v. MetLife Home Loans*, 2014 WL 5431154, at *3 (E.D. Pa. 2014).

The Nagys allege ManorCare's complaint violates the FDCPA in Counts One (§ 1692i(a)(1)), Two (§ 1692i(a)(2)(A)), and Three (§ 1692i(a)(2)(B)) because: 1) it was brought in the wrong location, as Northampton County is not the place of any involved real property; 2) there was no contract; and 3) the suit was improperly filed in Pennsylvania as Mr. Nagy is "an inhabitant of the land of New Jersey."  Count Four (§ 1692g(a)(1)) alleges a violation of FDCPA notice requirements for the amount of debt owed.  Given the similarity of Counts I-IV against ManorCare, the Court will address them together before moving to Counts V-XII.

---

[3] Under 15 U.S.C. § 1692a(6), the term "debt collector" is defined as: "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."  The term "debt collector" does not include persons defined in Section (F): "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor."

ManorCare moved to dismiss the Nagys' amended counterclaim for insufficiency on Counts I-IV, alleging the Nagys failed to plead *any* element establishing a *prima facie* case for a violation under the FDCPA. (ECF Docket No. 36, at 3) (emphasis added). This Court agrees with ManorCare that Counts I-IV should be dismissed, however, not because the Nagys failed to plead *any* element of the FDCPA; rather, this Court finds the Nagys did not allege ManorCare was a "debt collector" within the meaning of 15 U.S.C. § 1692a(6). Additionally, this Court does not consider ManorCare a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

The Supreme Court has found that "attorneys who regularly engage in debt collection or debt collection litigation are covered by the FDCPA, and their litigation activities must comply with the requirement of the act." *Goins*, 2014 WL 5431154, at *4 (citing *Heintz v. Jenkins*, 514 U.S. 291 (1995)). Moreover, our Circuit has defined "debt collector" based on the volume of *in rem* mortgage foreclosure actions filed in the Court of Common Pleas. *Id.* (citing *Crossley v. Lieberman*, 868 F.2d 566 (3d Cir. 1989)). 15 U.S.C. § 1692a(6) defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails *in any business the principal purpose of which is the collection of any debts*, or who regularly collects or attempts to collect, directly or indirectly, *debts owed or due asserted to be owed or due another*. 15 U.S.C. § 1692a(6) (emphasis added).

While the Nagys' amended counterclaim factually alleges ManorCare "filed their debt claim in Northampton County PA," the disjointed allegations within the amended counterclaim merely allege ManorCare attempted to collect an unpaid bill for Mrs. Nagy's care at the ManorCare of Easton, PA facility. Specifically, the Nagys aver that "a

5

letter addressed to Joseph Nagy, Jr. with *important billing information* enclosed was received at the Nagy home and *refused*." (ECF Docket no. 14, at 20 ¶109) (emphasis added). Additionally, "ManorCare again wrongly sent Joseph Nagy, Jr. another *important bill* for Joseph Eugene." (Id. at 20 ¶118) (emphasis added). And finally, "[o]n or about September 15, 2013, Joseph Albert received process for ManorCare's lawsuit for the nursing home facility's debt." (Id. at 23 ¶127.) Taken together, these factual allegations do not establish a *prima facie* case under the FDCPA. The Nagys do not allege ManorCare was a debt collector, let alone a debt collector within the meaning of 15 U.S.C. § 1692a(6).

Assuming the Nagys properly pled ManorCare was a "debt collector" under the FDCPA, this Court does not find ManorCare to be a debt collector. ManorCare's business is not the "principal purpose of which is the collection of any debts" and does not regularly collect or attempt to collect "debts owed or due asserted to be owed or due another." ManorCare's principal business is to "provide individualized post-hospital skilled nursing care," not debt collection. *See* ManorCare Health Services-Easton, https://www.heartland-manorcare.com/locations/manorcare-health-services-easton/. Thus, this Court does not find ManorCare itself to be a debt collector.

However, it is understood that our circuit and sister courts recognize law firms engaging in debt collection on behalf of clients as debt collectors. *Crossley v. Lieberman*, 868 F.2d 566 (3d. Cir 1989) (finding an attorney that regularly engaged in debt collection activities on behalf of clients was a "debt collector" subject to the FDCPA); *see also Sandlin v. Shapiro & Fishman*, 919 F. Supp. 1564 (M.D. Fla. 1996) (concluding a law firm hired by a mortgagee to collect a note and mortgage debt through

correspondence or legal proceedings, and where the firm directed the mortgagor to pay the law firm instead of the creditor, was a debt collector under the FDCPA).

Here, Kennedy, PC Law Offices ("Kennedy Law") represented ManorCare in the collections case in the Court of Common Pleas of Northampton County, Case No. C48-Cv2013-8832; later removed by Joseph A. Nagy, and presently before this Court. Presumably, Kennedy Law represented ManorCare in the state court proceedings as attorney and debt collector.[4] However, the Nagys amended counterclaim before this Court does not allege Kennedy Law acted as debt collector on behalf of ManorCare; nor did the amended counterclaim allege Kennedy Law specifically violated the FDCPA.

The Nagys allege "Mr. Nagy was sent a Certified Mail Delivery Notice from Kennedy Law" and two days later "Joseph Eugene was sent a large envelope from Rodney Myer, [of] Kennedy, PC." (ECF Docket No. 14, at 21 ¶115, 117.) On April 1, 2013, Joseph Eugene called Rodney Myer, counsel for ManorCare, and stated "the court does not have jurisdiction over a man, a sovereign living soul," to which Mr. Myer responded they were proceeding in Orphans' Court. (Id. at 21 ¶119.) Further, "Kennedy, PC sent the Nagy's a letter concerning guardianship." (Id. at 23, ¶124.) Clearly, the Nagys failed to satisfy the pleading standards to survive a Motion to Dismiss under Rule 12(b)(6) by failing to allege: 1) Kennedy Law violated, by act or omission, the provisions of the FDCPA; 2) Kennedy Law was a "debt collector" defined by the FDCPA.

---

[4] The Court presumes this relationship between ManorCare and Kennedy Law despite Mr. Nagy's failure to properly attach the complaint filed by ManorCare in C48-Cv2013-8832 when removing the case to this Court. The Court was able to locate the original Northampton County complaint filed by ManorCare against Mr. Nagy after coming across a similar case before the Honorable Joel H. Slomsky, docketed as 5:13-cv-01588-JHS.

7

It appears beyond doubt that the Nagys can prove no set of facts which would entitle them to relief. Therefore, Counts I-IV are dismissed with prejudice as to ManorCare.

2. **Count V: Major Fraud Against the United States (18 U.S.C. § 1031)**

Title 18 of the United States Code is a federal criminal statute which "does not create civil liability or a private right of action." *U.S. ex rel. Stafford v. Lugano*, C.A. No. 85-1642, 1989 WL 45910, at *2 (E.D. Pa. Apr. 19, 1989). Generally, a private party may not maintain suit under most provisions of Title 18. In the criminal context, the Supreme Court has refused to imply a private right of action in a bare criminal statute. *Shipp v. Donaher*, C.A. No. 09-2475, 2010 WL 1257972, at *12 (E.D. Pa. Apr. 1, 2010); *Jones v. Lockett*, C.A. No. 08-16, 2009 WL 2232812, at *8 (W.D. Pa. July 23, 2009); *Concert v. Luzerne County Children and Youth Services*, C.A. No. 08-1340, 2008 WL 4753709, at *3 (M.D. Pa. Oct. 29, 2008) ("Criminal statutes do not generally provide a private cause of action nor basis for civil liability); *Prunte v. Universal Music Group.*, 484 F.Supp.2d 32, 42 (D.D.C. 2007) (citing *Cort v. Ash*, 422 U.S. 66, 79-80 (1975)).

However, the above reasoning does not apply to 18 U.S.C § 1031 (Count V), also known as the "Whistle Blower Act." Section 1031 permits a private cause of action limited to employee whistle blowers. *Shipp*, 2010 WL 1257972, at *12 (citing *Jones*, 2009 WL 2232812, at *9). 18 U.S.C. § 1031(h)(1) provides a private cause of action for individuals who are "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by an employer because of lawful acts done by the employee." 18 U.S.C. § 1031(h)(1)

Here, the Nagys do not allege they are, or ever were, employees of ManorCare, Kennedy Law, Northampton County, The Commonwealth of Pennsylvania, Heartland

Hospice, or Aetna. The Whistle Blower Act limits this private right of action to employee whistle blowers. Therefore, the Nagys have failed to state a claim as a matter of law and Count V is dismissed with prejudice as to ManorCare, Kennedy Law, Northampton County, The Commonwealth of Pennsylvania[5], Heartland Hospice, or Aetna[6].

   3. **<u>Count VI: Racketeering (18 U.S.C. § 1957)</u>**

Federal criminal statute 18 U.S.C. § 1957, under Title 18 of the United States Code, does not create civil liability for a private right of action as defined in the previous section of this Opinion. *U.S. ex rel. Nagy v Patton*, C.A. No. 11-267, 2012 WL 1858983 (E.D. Pa. May 22, 2012) (finding 18 U.S.C. § 1957 does not create an implied private right of action for civil suits by private parties against violators); *Barrett v. City of Allentown*, 152 F.R.D. 50, 55-56 (E.D. Pa. 1993) (concluding 18 U.S.C. § 1957 does not

---

[5] The Commonwealth additionally argues the Nagys' amended counterclaim should be dismissed because Eleventh Amendment immunity bars federal subject matter jurisdiction of suits by private parties against states, state agencies, and state officials in their official capacities, with few exceptions. (ECF Docket No. 52, at 9) (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-70 (1997)). The Nagys' amended counterclaim seeks monetary damages against the Commonwealth of Pennsylvania. However, "a suit against a state is barred, regardless of the relief requested," and "neither supplemental jurisdiction nor any other basis of jurisdiction, including diversity jurisdiction under 28 U.S.C. § 1332, overrides the Eleventh Amendment." (Id.) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 121 (1984); *see Coeur d'Alene Tribe*, 521 U.S. at 270). As the Commonwealth correctly argues, states may consent to be sued in federal court; however, Pennsylvania has withheld this consent. (ECF Docket No. 52, at 10) (citing *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000); *see Seminole Tribe of Florida v. Florida*, 517 U.S.44, 55-56 (1996); *see Pennhurst*, 465 U.S. at 99; *see* 42 Pa. C.S. § 8521(b); *see* 1 Pa.C.S. § 2310). Because Pennsylvania has not waived its immunity, the Eleventh Amendment bars the Nagys' counterclaims against the Commonwealth.

[6] Aetna further argues the Nagys' amended counterclaim should be dismissed for failure to exhaust administrative remedies under ERISA. Aetna argues the Nagys seek benefits under the employer-sponsored plan which is subject to the exhaustion requirement. (ECF Docket No. 62, at 11.) "Except in limited circumstances . . . a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002). Absent limited circumstances, courts have granted Rule 12(b)(6) dismissal of ERISA cases regarding claims for benefits for failure to exhaust administrative remedies. *Shephard v. Aetna Life Ins. Co.*, 2009 WL 2448548, at *3 (E.D. Pa. 2009) (citing *Menendez v. United Food & Commercial Workers Local 450T, AFL–CIO*, No. 05–1165, 2005 WL 1925787, at *1–2 (D.N.J. Aug.11, 2005); *see also Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990). Aetna argues the Nagys "failed to allege exhaustion of remedies under the plan or that they took any action to pursue administrative remedies." (ECF Docket No. 61, at 11-12.) This Court agrees with Aetna.

create a private right of action). 18 U.S.C. § 1957 imposes liability on any individual who "knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity." 18 U.S.C. § 1957.

Accordingly, the Nagys' Racketeering claim (Count VI) will be dismissed because § 1957 does not create a private right of action for civil suits by private parties. Therefore, Count VI is dismissed with prejudice as to ManorCare, Kennedy, PC, Northampton County, The Commonwealth of Pennsylvania, Heartland Hospice, Aetna, Dr. Stephen Ksiazek, Brakeley Park Center, and New Eastwood Care and Rehab.[7]

### 4. Count VII: Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1962)

Racketeer Influenced and Corrupt Organizations Act ("RICO") prohibits certain conduct involving a "pattern of racketeering activity." 18 U.S.C. § 1962. Although Title 18 of the U.S. Code does not typically provide for a private right of action, The Supreme Court has stated that one of RICO's enforcement mechanisms grants a private right of action to "[a]ny person injured in his business or property by reason of a violation" of RICO. 18 U.S.C. § 1964(c); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006). "RICO accordingly proscribes various ways in which an 'enterprise,' § 1961(4), might be controlled, operated, or funded by a 'pattern of racketeering activity,' § 1961(1), (5)." *RJR Nabisco, Inc. v. European Community*, 136 S.Ct. 2090, 2112 (2016). Specifically, § 1962 of RICO consists of four separate subsections – each addressing a different issue.[8]

---

[7] The Nagys' amended counterclaim names Dr. Keyurkumar Daisaniya under Count VI, VII, VIII, and XII. However, Dr. Daisaniva is no longer a party to the action.

[8] "The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., makes it unlawful 'to ... invest' in an enterprise income derived from a pattern of racketeering activity, § 1962(a), 'to acquire or maintain' an interest in an enterprise through a pattern of racketeering activity, § 1962(b), 'to

The Nagys assert blanket violations of § 1962, therefore this Court will address all four subsections below.

First, under § 1962(a), a plaintiff must allege that he or she "suffered an injury specifically from the use of investment of income in the named enterprise." *Dianese, Inc. v. Com. of Pennsylvania*, 2002 WL 1340316, at *8 (E.D. Pa. 2002). "This provision was primarily directed at halting the investment of racketeering proceeds into legitimate business, including the practice of money laundering." *Id.* (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1188 (3d Cir.1993). The injury resulting from the use or investment of the racketeering income must be separate and distinct from the injury that occurred as a result of the racketeering acts themselves. *Id.* (citing *Lightening Lube*, 4 F.3d at 1188).

Second, under § 1962(b), the plaintiff must allege that he or she suffered an injury from the defendant's acquisition or control of an interest in a RICO enterprise. *Id.* at 9. For example, such injury occurs when the "owner of an enterprise infiltrated by the defendant as a result of racketeering activities is injured by the defendant's acquisition or control of his enterprise." *Id.* (citing *Lightening Lube*, 4 F.3d at 1190). The injury must be a consequence of the acquisition or control of an interest in a RICO enterprise, rather than the pattern of racketeering. *Id.* The plaintiff must also show control of the RICO enterprise by the Defendant resulted from the pattern of racketeering and must firmly show a "nexus between the interest and the alleged racketeering activities." *Id.* (citing *Lightening Lube*, 4 F.3d at 1190).

---

conduct or participate ... in the conduct' of an enterprise through a pattern of racketeering activity, § 1962(c), or 'to conspire' to violate any of those provisions, § 1962(d)." *RJR Nabisco, Inc. v. European Community*, 136 S.Ct. 2090, 2112 (2016).

Third, § 1962(c) requires establishing the existence of an enterprise.  A RICO enterprise consists of a group of people connected for the common purpose of engaging in a course of conduct.  *Dianese, Inc.*, 2002 WL 1340316, at *10.  Under § 1962(c), the plaintiff must demonstrate:

> (1) that the enterprise is an ongoing organization with some sort of framework or superstructure for making or carrying out decisions; (2) that the members of the enterprise function as a continuing unit with established duties; and (3) that the enterprise must be separate and apart from the pattern of activity in which it engages.

*Id*.  Typically, pleading bare allegations that the members consisted of an enterprise would be sufficient to survive a motion to dismiss, no matter how implausible.  *Id.*  However, as stated above, under RICO law, the alleged racketeering activity must be separate from the enterprise itself.  *Id. at 11*.

Finally, under § 1962(d), the plaintiff must plead that the defendant: "(1) knew of the RICO violations of the enterprise, and (2) agreed to facilitate those activities." *Id.* at 12.  Under subsection (d), the injury must have been caused by the RICO violation, rather than any act in furtherance of the conspiracy.  *Id.* (citing *Beck v. Prupis*, 529 U.S. 494, 505-507 (2000)).  "Any claim under section 1962(d) based on a conspiracy to violate the other subsection of § 1962 necessarily must fail if the substantive claims are themselves deficient." *Id.* (citing *Lightning Lube*, 4 F.3d at 1191).

Here, notwithstanding the Nagys' attempt to plead a RICO violation in the abstract, this Court finds the Nagys' amended counterclaim deficient as it fails to plead any element of § 1962(a)-(d).  Nowhere does the amended counterclaim allege the Nagys were injured "from the use of investment of income in the named enterprise," nor do the Nagys allege injury "due to the acquisition or control of an interest in a RICO enterprise"

by any of the Counter-Defendants. Moreover, the Nagys do not provide even bare allegations that Counter-Defendants consisted of an enterprise, which would have been sufficient to survive a motion to dismiss.

Therefore, the Nagys fail to state a claim upon which relief may be granted under RICO and Count VII is dismissed with prejudice as to ManorCare, Kennedy, PC, Northampton County, The Commonwealth of Pennsylvania, Heartland Hospice, Aetna, and Dr. Stephen Kaiazek.

5. **Count VIII: Conspiracy against Rights (18 U.S.C. § 241)**

Conspiracy against Rights (or conspiracy to violate federal rights) is federal criminal statute prohibiting persons from interfering with another's free exercise or enjoyment of any right or privilege secured by the Constitution or laws of the United States. 18 U.S.C. § 241. However, Title 18 of the United States Code is a federal criminal statute which does not create civil liability or a private right of action. *U.S. ex rel. Stafford*, 1989 WL 45910, at *2. As repeated throughout this Opinion, a private party generally may not maintain suit under most provisions of Title 18, with certain exceptions. *Shipp*, 2010 WL 1257972, at *12. This is not one of those exceptions.

As such, the Nagys are precluded from bringing a private cause of action under 18 U.S.C. § 241, conspiracy to violate federal rights. This Court and our circuit agree this is well settled law. *U.S. ex rel. Nagy,* 2012 WL 1858983 (rejecting private right of action for civil suits by private parties against violators); *see also Carpenter v. Ashby*, 351 Fed. Appx. 684, 687 (3d Cir. 2009) (*per curiam*) ("18 U.S.C. § 241 does not create a private right of action"); *see also Walthour v. Herron*, C.A. No. 10-1495, 2010 WL 1877704, at *3 (E.D. Pa. May 6, 2010) (concluding that no private right of action exists under 18

U.S.C. §§ 241, 242). Accordingly, this Court will dismiss Count VIII with prejudice as to ManorCare, Kennedy, PC, Northampton County, The Commonwealth of Pennsylvania, Heartland Hospice, Aetna, and Dr. Stephen Ksiazek.

   **6. Count IX: Legal Malpractice**

Count IX (Legal Malpractice) of the Nagys' amended counterclaim was dismissed in this Court's June 25, 2015 Opinion (ECF Docket No. 33). Therefore, no further discussion is required.

   **7. Count X: Civil Rights and Elective Franchise (28 U.S.C. § 1343)**

District Courts have jurisdiction over federal statutory claims under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights and elective franchise). *Williams v. CVS Caremark Corporation*, 2016 WL 3912839, at *2 (E.D. Pa. 2016). Section 1343 specifically states "[t]he district courts shall have original jurisdiction over any civil action authorized by law to be commenced by any person." 28 U.S.C. § 1343. Section 1343, however, does not provide a statutory basis for a cause of action; it provides this Court with jurisdiction over federal constitutional questions. *Vangerve v. Pennsylvania*, C.A. No. 10-2581, 2011 WL 2326970, at *3 (E.D. Pa. June 14, 2011). As the Commonwealth argues, "Section 1343 does not in itself create any rights but merely gives the district court power to hear the causes and act when rights are asserted under other provisions" pursuant to acts of Congress where a federal right is being asserted that provides for the equal rights of citizens. (ECF Docket No. 52, at 17) (citing *Dorak v. Shapp*, 403 F.Supp. 863, 865 (M.D. Pa. 1975); *Henderson v. Defense Contract Admin Serv. Reg.*, 370 F.Supp. 180, 181 (S.D.N.Y. 1973)).

Here, the Nagys improperly plead Section 1343 as a cause of action and argue ManorCare, *et al.*, willfully precluded Mrs. Nagy's durable power of attorney, Joseph Eugene, from making health and legal decisions. Because § 1343 does not itself create any rights and only confers jurisdiction on the United States District Courts to hear certain causes of action, Count X (civil rights and elective franchise) is dismissed with prejudice as to Kennedy, PC, Northampton County, The Commonwealth of Pennsylvania, Aetna, and Heartland Hospice.

8. **<u>Count XI: Abuse of Process</u>**

Some confusion exists as to whether the traditional common-law abuse of process still exists as a source of relief in Pennsylvania given the existence of the statute for wrongful use of civil proceedings (Dragonetti Act) under 42 Pa.C.S.A. § 8351(a). Much has been made of the comment from the Third Circuit and Pennsylvania Supreme Court that the Dragonetti Act "subsumed" the common law tort for abuse of process. *Langman v. Keystone Nat'l Bank & Trust Co.*, 672 F.Supp.2d 691, 699 (E.D. Pa. 2009). However, the Pennsylvania state and federal courts – including our Circuit – have not taken that approach and require the plaintiff show the defendant: "(1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Id.* at 700.

This Court can identify at least one element within the Nagys' disjointed counterclaim necessary to establish a claim for abuse of process: "use of legal process against the plaintiff." (ECF Docket No. 14, at 23 ¶127.) The Nagys aver that Joseph Albert received process for ManorCare's lawsuit over the Nagys' upaid bills. Yet, this allegation only references ManorCare and not any of the other named Counter-

15

Defendants under Count XI. Furthermore, the Nagys' amended counterclaim does not allege the Counter-Defendants' use of the legal process was done primarily to accomplish a purpose for which the process was not designed. An argument can be made that the Nagys' amended counterclaim alleges that "harm was caused to the plaintiff," however, it is not within the purview of this Court to manufacture allegations raised if not so specifically pled by a party.

Therefore, Count XI is dismissed with prejudice as to against ManorCare, Kennedy, PC, Northampton County, The Commonwealth of Pennsylvania, Aetna, and Heartland Hospice.

9. **Count XII: *Capitis Diminutio* (diminishing of status)**

The Nagys allege *Capitis Diminutio* following the care provided by Counter-Defendants under Count XII. Prior to her death, the Nagys claim Joseph Eugene requested that the Doctors, nursing home, and hospital treat Mrs. Nagy with natural herbs; however, the Counter-Defendants allegedly responded that they were required to administer medicines approved by the Food and Drug Administration ("FDA"). (ECF Docket No. 14, at 44 ¶189.) Thus, the Nagys allege they were prevented from exercising alleged rights to choose certain treatments.

Notwithstanding the allegations under *Capitis Diminutio*, this Court does not recognize the foregoing as an identifiable cause of action. *Capitis Diminutio* is defined as the destruction of the 'caput' or legal personality. *Black's Law Dictionary* 239 (9th ed. 2011). As it is not a recognized cause of action by this Court or any other court in the United States, Count XII *Capitis Diminutio*, is dismissed with prejudice as to ManorCare, Kennedy, PC, Northampton County, The Commonwealth of Pennsylvania, Heartland

16

Hospice, Aetna, Dr. Stephen Ksiazek, Dr. Cumbo, Dr. Bera, Brakeley Park Center, New Eastwood Care and Rehab, and St. Luke's Warren Hospital.

10. **Count XIII: Petition for Constructive Trust**

Constructive trust is a remedy imposed to restore particular funds or property to the true owner. *In re Kamand Constr., Inc.*, 298 B.R. 251, 255 (Bkrtcy. M.D. Pa. 2003). Constructive trusts are enforced when a party acquires legal title to property by violating some implied or express duty owed to another, or through bad faith, fraud, or lack of good conscience; constructive trusts have also been imposed absent wrongful conduct in order to prevent unjust enrichment. *In re Kulzer Roofing, Inc.*, 139 B.R. 132, 141 (Bkrtcy. E.D. Pa. 1992) (citing *Pierro v. Pierro*, 264 A.2d 692, 696 (Pa. 1970)).

In a constructive trust, the defendant must have acquired legal title in a way that creates an equitable duty in favor of the plaintiff. *Pierro,* 264 A.2d at 696. A constructive trust does not require parties' intent to create a trust, rather, "it is an equitable remedy designed to prevent unjust enrichment." *Stauffer v. Stauffer*, 351 A.2d 236, 241 (Pa. 1976). Therefore, because there is no "rigid standard" to impose a constructive trust, the test is whether unjust enrichment can be avoided. *Id.*

Here, the Nagys' amended counterclaim petitions this Court for a constructive trust against Counter-Defendants. The Nagys do not specify what, if any, property the Counter-Defendants acquired legal title to, thereby creating an equitable duty. This Court cannot impose a constructive trust without the Nagys identifying a violation of some implied or express duty owed, or the presence of unjust enrichment to Counter-Defendants. Absent some alleged unjust enrichment, this Court declines to impose a

17

constructive trust without details or allegations compelling equitable remedy. Accordingly, Count XIII is dismissed with prejudice as to all Counter-Defendants.

### 11. Count XIV: Wrongful Death

The Nagys allege a state-law claim under the Wrongful Death Act for the death of Mrs. Nagy while in the care of Counter-Defendants. Wrongful death requires the plaintiff prove the death was caused by violence or negligence of the defendant.[9] *Quinby v. Plumsteadville Family Practice, Inc.*, 907 A.2d 1061, 1077 (Pa. 2006) (citing 42 Pa.C.S. § 8301(a)). Wrongful death is not a substantive and independent cause of action but is "derivative of the injury which would have supported the decedent's own cause of action and is dependent upon the decedent's cause of action being viable at the time of death." *Sullivan v. Warminster Tp.*, 765 F.Supp.2d 687, 707 (E.D. Pa. 2011); *see also Sunderland v. R.A. Barlow Homebuilders*, 791 A.2d 384, 391 (Pa. Super. Ct. 2002) (citing *Moyer v. Rubright*, 651 A.2d 1139, 1143 (Pa. Super. Ct. 1994). Thus, an action for wrongful death cannot survive if the decedent could not have recovered for the injuries sustained had they lived. *Sunderland*, 791 A.2d at 391. The action for wrongful death merely provides a remedy for plaintiffs to recover when unlawful conduct results in death. A finding of negligence – along with proximate cause – is required to impose liability for wrongful death. *Quinby,* 907 A.2d at 1077. Therefore, the plaintiff must establish the defendant's negligence was a proximate cause of the death.

Here, the Nagys do not plead negligence as derivative of the injury leading to Mrs. Nagy's death. Moreover, the Nagys do not allege Counter-Defendants' negligence

---
[9] "An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery." 42 Pa.C.S.A. § 8301(a).

18

was a proximate cause of Mrs. Nagy's death.  However, in the alternative, assuming the Nagys successfully alleged negligence as a derivative of wrongful death, the Nagys failed to provide a certificate of merit.  The Nagys' claim for wrongful death appears to be based on a claim that Mrs. Nagy's death was caused by nursing care that deviated from the acceptable standard of care.  Under Pennsylvania law, "in any action based upon an allegation that a licensed professional deviated from an acceptable professional standard . . . the plaintiff shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit."  Pa. R. Civ. P. 1042.3.

Although *pro se* litigants are afforded more deference, they are still required to provide a certificate of merit to the court given the "substantive" nature of the certificate.  *Boring v. Sanders*, 2013 WL 4080308, at *5-6 (M.D. Pa. August 13, 2013) (citing *Liggon-Reading v. Estate of Sugarman*, 659 F.3d 258 (3d Cir. 2011); *see also Ramos v. Quien*, 631 F.Supp.2d 601, 611 (E.D. Pa. 2008); *see also Stroud v. Abington Mem. Hosp.*, 546 F.Supp.2d 238, 248 (E.D. Pa. 2008).  Although the Nagys are representing themselves *pro se*, albeit improperly, they are still required to provide a valid certificate of merit.  Therefore, Count XIV is dismissed with prejudice as to all Counter-Defendants.

## C.  CONCLUSION

For the foregoing reasons, the motions are granted and the Nagys' amended counterclaim is dismissed with prejudice.  The following Counter-Defendants are dismissed: Kennedy, PC; Northampton County; Aetna, Inc.; Dr. Edward Cumbo; Dr. Dilip Bera; Brakeley Park Center; New Eastwood Care and Rehab; Commonwealth of Pennsylvania; Dr. Stephen Ksiazek; and St. Luke's Warren Hospital.  Therefore,

ManorCare's original suit shall proceed against the Nagys. An accompanying order will follow.